[No. 17591.   *En Banc.*   January 7, 1924.]

JAMES E. CARR, *Appellant*, v. NORTHERN PACIFIC
BENEFICIAL ASSOCIATION *et al., Respondents.*[1]

BENEFICIAL ASSOCIATIONS—(3) LIABILITY TO MEMBERS—ACTIONS—
PLEADING.  In an action by a member against a beneficial association,
it will be presumed in the absence of findings to the contrary, that
he was a member with equal rights with other members whose
voice controlled the management.

SAME (3).  A voluntary association organized for the purpose of
furnishing medical and hospital aid to employees of a railroad is
a charitable association, and is not liable to a member for the negli-
gence of a physician employed by it, in the absence of want of ordi-
nary care in selecting the physician (HOLCOMB, TOLMAN, and PEM-
BERTON, JJ., dissenting).

Appeal from a judgment of the superior court for
Franklin county, Truax, J., entered March 14, 1922,
upon sustaining a demurrer to the complaint, dis-
missing an action in tort.   Affirmed.

*Chas. W. Johnson*, for appellant.

*Cannon & McKevitt* and *Edward A. Davis*, for re-
spondents.

PARKER, J.—The plaintiff, Carr, commenced this
action in the superior court for Franklin county, seek-
ing recovery of damages from the defendant beneficial
association, alleged to have resulted to him from the
negligence of incompetent physicians and surgeons of
the association in treating him at its hospital while a
member of the association, and from the negligence of
the association in selecting such incompetent physi-
cians and surgeons and assigning to them the duty of
treating him while in its hospital.   The plaintiff's
complaint was demurred to by the association upon the
sole ground ''that the facts therein set out are not

[1]Reported in 221 Pac. 979.

sufficient to constitute a cause of action.'' This demurrer was sustained by the trial court. Upon the plaintiff electing to stand upon his complaint and not plead further, a judgment of dismissal was rendered against him accordingly, from which he has appealed to this court.

The allegations of appellant's complaint controlling of his claimed rights here drawn in question are sufficiently noticed as follows:

''That at all times herein mentioned, the defendant, Northern Pacific Beneficial Association was and now is a voluntary association, organized for the purpose of furnishing medical, surgical and hospital attention to employees of the Northern Pacific Railway Company, with hospital and headquarters at Tacoma, Washington; that members of the defendant are too numerous to be made parties defendant to this action and therefore action is commenced against G. H. McMinnee, P. A. Remington, as officers and agents of the said association and the members thereof.

''That up to and including the 20th day of July, 1920, the plaintiff was a member of the defendant association;    . . .

''That commencing in October, 1908, and continuing to January, 1913, on which last mentioned date the plaintiff was totally incapacitated through the act of the defendant, the plaintiff contributed monthly such sum as was assessed against this plaintiff, which sum was collected and withheld by the Northern Pacific Railway Company, a corporation, for whom the plaintiff was employed, such collection by the said railway company as agent for the said association and by the said railway company paid to the said association; that in return for said payment, the defendant association agreed with the plaintiff that it would furnish all necessary and proper medical surgical aid and hospital services.

''That in January, 1913, the plaintiff became sick with appendicitis and a soas abscess, and pursuant to said agreement, the said plaintiff was taken to the

hospital of the defendant, at Tacoma, Washington, there to be operated upon, or to be treated for said ailment. That upon arriving at the hospital at Tacoma as aforesaid, the plaintiff was operated upon by one of the physicians and surgeons therein employed, to-wit: Dr. S. W. Mowers, and was then provided with nurses and attendants by the defendants as aforesaid; that the defendant association was negligent and did not use due care in the selection of the surgeons and physicians assigned to the treatment of the plaintiff. That is: Dr. S. W. Mowers, the surgeon, was not in sympathy with the defendants' method of doing business and providing medical and surgical aid, as the defendant was doing and was therefore negligent in the treatment of this plaintiff, and the defendant did not use ordinary care in making the selection of the said S. W. Mowers as surgeon to treat the plaintiff, as a result of which:''

Then follow allegations of Dr. Mowers' negligence in treating appellant.

''That after the operation as aforesaid, the defendant furnished a physician, one Eisengraver, to care for and dress the plaintiff's wound; that said Eisengraver was notoriously negligent and incompetent and the defendant failed to use ordinary care in the selection of Eisengraver as aforesaid, as a result of which,''

Then follow allegations of Dr. Eisengraver's negligence in treating appellant, and allegations of further negligent treatment of appellant by the association's physicians and surgeons up to March, 1918; and, also, allegation of the amount of damages suffered by appellant from all of such alleged negligent selection of incompetent physicians and surgeons and their treatment of appellant.

Counsel for appellant concedes in his brief that the association is not liable in damages for the mere negligent treatment of appellant by its physicians and surgeons, in view of the fact that the association is a

voluntary association organized exclusively for the medical and surgical treatment of its own members, of which appellant is one. This is made clear by the language of appellant's counsel in his brief, as follows:

"In our complaint we are not seeking to hold the defendant association liable for the malpractice or negligence of its servants, but simply to hold the defendant liable for negligence and failure to use due care in selecting servants."

There is invoked in behalf of appellant the general rule as stated in the text of 3 Wharton & Stille's Medical Jurisprudence (5th ed.), § 507, as follows:

"A public charitable institution such as a hospital deriving its funds from a public or private charity, and conducting its affairs for the public purpose of administering to the sick without compensation, is under duty to persons admitted to it to use due and reasonable care in the selection of proper agents and physicians."

citing also the decision of this court in *Richardson v. Carbon Hill Coal Co.*, 10 Wash. 648, 39 Pac. 95, wherein Judge Anders, considering a claim of liability against the coal company in maintaining a hospital for its employees, observed:

"This hospital was maintained and the physician provided for the sole purpose of relieving sick and injured employes without expense to them and without any intention on the part of the company of making any profit out of the undertaking. It was therefore a charitable institution and it was supported by the contributions of employes, and carried on in their interests. And if the company did employ the physician, as claimed by respondent, to look after and treat the sick and injured, it is not liable for his negligence, but is responsible only for want of ordinary care in selecting him. *McDonald v. Hospital*, 120 Mass. 432 (21 Am. Rep. 529); *Van Tassell v. Hospital*, 15 N. Y. Supp. 620; *Fire Ins. Patrol v. Boyd*, 120 Pa. St.

624 (15 Atl. 553); *Laubheim v. Steamship Co.*, 107 N. Y. 228 (13 N. E. 781, 1 Am. St. Rep. 815); *U. P. Ry. Co. v. Artist*, 60 Fed. 365."

The above quoted language from Wharton & Stille's Medical Jurisprudence manifestly has reference in a general way only to the liability of charitable institutions to those treated therein who are strangers to it, and not to the liability of voluntary associations, such as this association, to its members; and the above quoted language from *Richardson v. Carbon Hill Coal Co., supra,* has reference to the liability of the coal company to its employees in its management of its hospital; not a voluntary association managed by its members, but a charitable institution managed by the coal company.

The only allegations of this complaint which inform us as to appellant's relation to this association are that it is a voluntary association and that he was, at the times in question, a member of it. Being furnished no other information touching the nature of the association and his relation to it, we must presume that he was a member not only with equal rights, but with equal powers touching its management, with all other members; and that its management is the result of the voice of all such members expressed in some appropriate manner. This problem, in substance, was disposed of by the supreme court of Minnesota in *Martin v. Northern Pacific Beneficial Ass'n,* 68 Minn. 521, 71 N. W. 701, the court holding directly contrary to the contentions here made in behalf of appellant. It is true in that case the negligence alleged to have been the result of the death of plaintiff's husband was the negligence of the physicians and surgeons of the association; it not being claimed that the association negligently employed incompetent physicians and surgeons

for the treatment of her deceased husband. But the logic of the decision is, it seems to us, as decisive of the nonliability of the association under the one charge of negligence as under the other, in view of the fact that it was not a case of a charge of negligence against a charitable institution by one who was a stranger to it, but a charge against a voluntary association by the personal representative, the widow, of one who was a member of it. Holding that recovery could not be had by the widow of the deceased because of the nature of the association, it being a voluntary one and he being a member of it, Justice Buck, speaking for the court, pertinently observed:

"There is no allegation or pretense that this association is a corporation. It is merely a combination or association of individuals, and no one was to be liable except for assessment, with the right to surgical care and treatment in case of injury while in the employment of the railroad company. The suit is one at law for a tort. As the deceased was a member of the association, he must be deemed to have been as much a party to the selection of the physicians and nurses at the hospital and its management as any other member of the society. No member had any greater or less rights or obligations than the deceased. The employes at the hospital were just as much the servants of Mr. Martin as they were of all or any other one of his associates, and he could not bring a suit against another for a personal wrong done him by such servant, because it would be as much the act of Martin as that of his associates. If a tort has been committed upon the person of Mr. Martin by the employes of the association, the remedy is against those who committed it, either separately or jointly, and not against the association. Martin was in the hospital by virtue of his membership in the association. He had the same interest in the whole subject-matter of its operation and management as any other member. This being so, he, as one of the members of the association, could not

have maintained such an action, and hence his personal representative cannot do so.''

No decision has come to our notice holding to the contrary of this view, so well expressed, though a number of decisions are cited holding in substance that a charitable institution may be rendered liable for its negligent selection of incompetent physicians resulting in injury to one who has by invitation become its patient. We are of the opinion that the complaint does not state a cause of action as against the Northern Pacific Beneficial Association.

It seems also plain that the complaint fails to state a cause of action as against Mr. McMinnee, the association's manager, or Dr. Remington, its chief surgeon; there being nothing in the complaint indicating that they had anything to do with the selection of the physicians claimed by appellant to have been incompetent; or, indeed, that, at the time of the selection and service of those physicians, either of them had anything to do with the association. However, as we understand counsel for appellant, Mr. McMinnee and Dr. Remington were made defendants merely as representatives of the association and its members, and not with the view of having any personal judgment rendered against them. In other words, appellant, by this action, seeks to recover against the association as an entity composed of its members; that is, to subject its property and resources to such judgment as he might recover.

The judgment is affirmed.

Main, C. J., Fullerton, Mackintosh, Bridges, and Mitchell, JJ., concur.

Holcomb, J. (dissenting)—This decision seems to be in conformity with legal precedent, but it is not in accord with justice, or what the law ought to be. The

association is not a partnership in any sense, but is a very extensive voluntary association. Its governing officers are elected, and so are the governing officers of a municipal or private corporation elected by the members. No one ever heard of a member of a community or of a private corporation being precluded from suing the municipality or the corporation for personal injuries inflicted upon the citizen or the stockholder by the negligent acts of those carrying on the functions of the municipality or the corporation. A stockholder in the Northern Pacific Railway Company could undoubtedly wage an action for such negligence as alleged in this action.

It is not well to adhere blindly to precedent and lose sight of remedial justice.

TOLMAN and PEMBERTON, JJ., concur with HOL-COMB, J.