FRAY, Appellant, v. AMALGAMATED MEAT CUTTERS & BUTCHER WORKMEN OF NORTH AMERICA, A.F.L.– C.I.O., LOCAL UNION No. 248, Respondent.

*February 5—March 8, 1960.*

632

For the appellant there was a brief by *Lakes & Marcuvitz* of Milwaukee, and oral argument by *Alan Marcuvitz*.

For the respondent there was a brief by *Goldberg, Previant & Cooper* and *H. L. Kastrul,* and oral argument by *Hugh Hafer,* all of Milwaukee.

HALLOWS, J. The issue presented is whether or not a union member can sue his union for negligently failing to represent him in his employment relations with his employer. The complaint alleges the plaintiff was an employee of City Dressed Beef Company and, as a member in good standing of defendant union, the defendant owed him the duty to perform with care, skill, reasonable expedience, and faithfulness all matters in which the union represented his employment interests. It is further alleged the plaintiff was unlawfully discharged by his employer on December 23, 1957, and immediately thereafter the plaintiff gave due notice of his discharge to the union; that the union was under a duty to register a formal grievance with the employer within two working days and make a formal request for arbitration within five working days, which duties the union negligently failed to perform; and, as a result of defendant's failure to act, the plaintiff lost his reinstatement rights, his seniority rights, and earnings to the extent of $14,000.

The trial court decided and the defendant argues that an unincorporated labor organization has no legal entity or existence apart from that of its members, and while the union may be sued in its union name as a matter of procedure, in substance the action is against all members of the union and, because the plaintiff is a coprincipal with all other union members, he is in effect suing himself and the other coprincipals for the negligence of their common agent, which he cannot do. The defendant relies, as did

the lower court, on this court's decision in *Hromek v. Freie Gemeinde* (1941), 238 Wis. 204, 298 N. W. 587. In the *Hromek Case* suit was for personal injuries by the plaintiff who was a member of the interpleaded defendant union which had rented a meeting room in Jefferson Hall in the city of Milwaukee from the defendant. The plaintiff had entered the hall for the purpose of attending the union meeting and tripped over a platform at the rear of the hall. Negligence of the union's officers was alleged in respect to maintaining the platform in such a location. The trial court held that the plaintiff could recover from the owner of the building and the owner could have contribution against the union. On appeal this court affirmed the judgment against the owner, but reversed the judgment against the union because there was no common liability owing by the union to its member, the plaintiff. In holding that a union member could not recover from the union for its negligence, this court reasoned that the union was an unincorporated association having no existence apart from that of its members who were coprincipals and while a principal may sue an agent for dereliction of duty, he may not sue his coprincipals for the dereliction of their common agent.

In the *Hromek Case* the duty of the union was owed generally to everyone in the hall and not to the plaintiff by reason of his membership or by reason of the function of the union in the process of collective bargaining. An injured nonmember could have sued the union and stated a cause of action. The theory of imputing negligence to members of a union as coprincipals was applied in a similar situation in *De Villars v. Hessler* (1950), 363 Pa. 498, 70 Atl. (2d) 333, and recovery denied to a union member injured as a result of the negligent operation of a steam table maintained by his union at a county fair. However,

the *Hromek Case,* or the doctrine that a union member cannot sue his union because it has no separate entity, has been followed or adopted in other situations where there existed a duty to the particular member. See *Kordewick v. Brotherhood of Railroad Trainmen* (7th Cir. 1950), 181 Fed. (2d) 963, dismissing the complaint of members of a railroad union against the union for damages suffered by reason of the withdrawal of their claims against the railroad by the officers of the union; *Marchitto v. Central R. Co. of N. J.* (1952), 9 N. J. 456, 88 Atl. (2d) 851, involving an action by a member of the Brotherhood of Railroad Trainmen against the railroad and the union for failure of the union to prosecute wage claims and seniority rights of the plaintiff. Other cases so holding are: *Roschmann v. Sanborn* (1934), 315 Pa. 188, 172 Atl. 657; *Storms v. United G. & M. Union* (1940), 64 Ohio App. 19, 27 N. E. (2d) 781; *McClees v. Brotherhood* (1938), 59 Ohio App. 477, 18 N. E. (2d) 812; *Brotherhood of Railroad Trainmen v. Allen* (Tex. Civ. App. 1950), 230 S. W. (2d) 325; *Huth v. Humboldt Stamm* (1891), 61 Conn. 227, 23 Atl. 1084. See also 14 A. L. R. (2d), 470–473.

The problem is not a question of whether the union can be sued in its common name. We have held it can be on the ground of convenience. Otherwise, all members of the union would be required to be named defendants or the procedural device of a class suit would have to be employed. See the *Hromek Case* and cases therein cited.

The question presented is one of substantive law, *i.e.,* whether the union, being an unincorporated association, can under some circumstances be liable to one of its members for the negligence of its agent. Assuming for the purpose of argument that one who acts for a union is the common agent of its members who are coprincipals, can it be said that this concept of an unincorporated association should be

applied to a particular situation where the facts will not support or justify its application? A critical examination of this theory leads one to ask what are the limits and the scope that should be placed on its application when applied to modern labor unions as they exist in fact today. It would seem that the essential element of the theory is that the act or the omission to act complained of should be one which can reasonably be considered as done or omitted on behalf of the injured member. To say that an agent, who wilfully or negligently violates a duty to his principal, acts on his behalf would be an unwarranted extension of the agency concept and certainly out of keeping with reality. This reasoning is well explained in *Bonsor v. Musicians' Union* (Eng. 1955), 3 W. L. R. 788, 3 All E. R. 518.

In several recent cases the doctrine of imputation to all members of a union was not applied and the wrongful act was not imputed to an injured member when committed in the course of an undertaking that was strictly adverse to the member's interest. In *United Asso. of Journeymen, etc., v. Borden* (Tex. 1959), 328 S. W. (2d) 739, the court held that a complaint stated a cause of action for damages by a member of a labor union for wrongfully depriving him of the right to work on a construction job when the acts alleged were wilful and malicious and constituted a conspiracy. The court stated (p. 742):

"This is simply another version of the agency rule that a principal is not liable for the torts committed by his agent while acting adversely to him. See 3 C. J. S., Agency, sec. 259; Mechem on Agency (2d ed. 1914), Vol. 2, p. 1311, sec. 1728."

The *Borden Case,* however, made a distinction between a wilful tort and the previously decided *Allen Case, supra,* on the ground that the *Allen Case* involved negligence in performing services for the benefit of the union member and

other union members, and therefore the imputation of the negligence to the plaintiff union member was proper.

In *Taxicab Drivers' Local Union No. 889 v. Pittman* (Okla. 1957), 322 Pac. (2d) 153, the imputation doctrine was not applied in a suit by a member against his union for damages for being wrongfully suspended from work at the request of the union because he would not pay a fine wrongfully levied. In answer to the contention that the union was not liable for the acts of its agent because the plaintiff member was equally responsible for the wrongful conduct, the court said (p. 167) :

"We note, however, that in each of those cases [holding that a labor union or other unincorporated association is not liable to a member for damage caused by the association's agent] the conduct of the agent was in the performance of his duty on behalf of the association in some project from which the plaintiff could reasonably expect to benefit just as much as any other member, at the inception of the project. . . . Common sense leads inexorably to the conclusion that officers of the union causing plaintiff to be suspended from work without pay are anything but his agents for that purpose. The contrary conclusion would smack of flagellantism, an unlikely theory upon which to determine legal liabilities. The use of the agency doctrine under these specific circumstances has no support either in reason or public policy."

We believe there may be fact situations when it would be unjust or unrealistic to apply the *Hromek Case* doctrine of imputation of a union officer's or agent's negligence to an injured member. In such cases the court should regard a union in legal contemplation as separate from its members, which in fact it is, and not apply a legal fiction which leads to an absurd result.

An unincorporated society for some purposes has been held to be a separate entity. The union in its brief admits

that a union may be sued in contract and a member of a labor union may sue the union to enforce a contractual obligation. In making a contract, the union is treated as a separate entity. It is beyond dispute that the charter and the by-laws of the union constitute a contract between the union and its members. *United Automobile, A. & A. I. Workers v. Woychik* (1958), 5 Wis. (2d) 528, 93 N. W. (2d) 336; *Local No. 261, International Union v. Schulze* (1958), 3 Wis. (2d) 479, 89 N. W. (2d) 191; *Herman v. United Automobile, A. & A. I. Workers* (1953), 264 Wis. 562, 59 N. W. (2d) 475. A union is treated as a separate entity for the purpose of suing its members for dues, strike penalties, and fines; and, conversely, it is admitted that a member can sue his union for a welfare-fund payment due him or to recover an overpayment of dues, for wrongful expulsion, or for other breaches of the membership contract.

Recently this court held in *Teubert v. Wisconsin Interscholastic Athletic Asso.* (1959), 8 Wis. (2d) 373, 99 N. W. (2d) 100, the common-law rule, that an unincorporated voluntary association could not be sued as an entity, did not apply. Some stress was laid on the theory that when a voluntary association has the attributes of a legal entity in fact, especially when they are derived from statutes, the necessities of the case have led courts to recognize such an association as a separate legal entity apart from its members. In *Clark v. Hein-Werner Corp.* (1959), 8 Wis. (2d) 264, 99 N. W. (2d) 132, 100 N. W. (2d) 317, this court, in discussing the union's fiduciary duty of fair representation to its members, stated that when certain members' interests were not represented by the union in the arbitration proceeding, the giving of notice of the arbitration hearing to such members and the opportunity to intervene were required as conditions to an award adverse to such members being binding upon them. The case recognized the union

was not the agent in fact for such members in such a situation. Other situations were pointed out where the union was treated as an entity and not acting as an agent.

We have recognized that a member of a union is not a party to the collective-bargaining agreement entered into with the employer by the union, which union was treated in character as distinct from its members. *Dressler v. Wisconsin E. R. Board* (1959), 6 Wis. (2d) 243, 94 N. W. (2d) 609, 95 N. W. (2d) 788; *Pattenge v. Wagner Iron Works* (1957), 275 Wis. 495, 82 N. W. (2d) 172. In *International Union v. Industrial Comm.* (1946), 248 Wis. 364, 21 N. W. (2d) 711, a union was held to be an employer distinct from its members for the purposes of, and under, the Wisconsin Unemployment Compensation Act. The court distinguished the *Hromek Case, supra,* and rejected the argument that a union could not be an employer and an employee at the same time.

In treating the union as a legal entity for a limited purpose it seems entirely reasonable that the funds and assets of the union devoted to the common cause should alone be the limit of the entity's liability for such purpose. In *United Mine Workers v. Coronado Co.* (1922), 259 U. S. 344, 42 Sup. Ct. 570, 66 L. Ed. 975, the supreme court, in allowing a suit against the union, treated the union and its assets as a separate entity from its 400,000 members, and stated (p. 385) :

"But the growth and necessities of these great labor organizations have brought affirmative legal recognition of their existence and usefulness and provisions for their protection, which their members have found necessary. Their right to maintain strikes, when they do not violate law or the rights of others, has been declared. The embezzlement of funds by their officers has been especially denounced as a crime. The so-called union label, which is a quasi trade-mark to indicate the origin of manufactured product in union

labor, has been protected against pirating and deceptive use by the statutes of most of the states, and in many states authority to sue to enjoin its use has been conferred on unions. They have been given distinct and separate representation and the right to appear to represent union interests in statutory arbitrations, and before official labor boards."

The opinion contains an extended reference to the various federal and state statutes recognizing the separate entity of unions for various purposes.

There are dicta in some cases and statements by scholars of labor law to the effect that a union ought to be liable to a member for its arbitrary, or negligent, or bad-faith action in representing or failing to represent a member in his employment relations. *Donato v. American Locomotive Co.* (1954), 283 App. Div. 410, 127 N. Y. Supp. (2d) 709; affirmed, 306 N. Y. 966, 120 N. E. (2d) 227; *Zdero v. Briggs Mfg. Co.* (1953), 338 Mich. 549, 61 N. W. (2d) 615; *Di Rienzo v. Farrand Optical Co.* (1956), 148 N. Y. Supp. (2d) 587; *Guszkowski v. United States Trucking Corp.* (D. C. 1958), 162 Fed. Supp. 847; *Jenkins v. Schluderberg, etc., Co.* (1958), 217 Md. 556, 144 Atl. (2d) 88; *Parker v. Borock* (1959), 5 N. Y. (2d) 156, 182 N. Y. Supp. (2d) 577; "Rights under a Labor Agreement," by Archibald Cox, 69 Harvard Law Review, 601; "Individual Enforcement of Collective Bargaining Agreements," by Archibald Cox, 8 Labor Law Journal, 850. See also Title 1, sec. 101 (a) (4), Labor Management Reform Act (29 USCA, sec. 411 (a) (4), 1959 Suppl.), providing no labor organization (in industry affecting commerce) shall limit the right of a member to sue, but may require exhaustion of reasonable internal hearing procedure. .

However, we do not mean to say every disgruntled union member has a cause of action against his union for the manner in which it represented or failed to represent his interest. Many union constitutions and by-laws contain

provisions for the internal regulation and settlement of disputes between the members and the union which must be exhausted as a condition precedent to bringing a suit. The union has great discretion in processing the claims of its members, and only in extreme cases of abuse of discretion will courts interfere with the union's decision not to present an employee's grievance. See 44 Virginia Law Review (No. 8, 1958), 1337, 1338. In certain cases for the greater good of the members as a whole, some individual rights may have to be compromised. Whether or not a cause of action is stated depends upon the particular facts of each case. *Kordewick v. Brotherhood of Railroad Trainmen, supra.*

We hold only upon this appeal that the *Hromek Case* doctrine does not exclude all possibility of an action by an injured member of a union against the union, virtually as an entity, arising out of the negligence of union officers or agents in the representation of the injured member in a grievance against his employer. Thus, we cannot agree with the reasoning of the circuit court for its holding. We believe, however, the complaint does not state facts sufficient to constitute a cause of action against the union. The complaint merely states the defendant owed a duty to represent the plaintiff in two respects. It does not state the pertinent terms of the membership agreement or of the bargaining agreement, if any, between the defendant and the plaintiff's employer. The complaint does allege that the discharge was unlawful but does not state the facts making it so. The allegation is more of a conclusion of law than a fact. The complaint alleges that the union's failure to act caused the loss of plaintiff's rights. But in this context such an allegation of causation without the facts as to the agreements which were in force is a conclusion of law.

The trial court did not consider the sufficiency of the complaint and dismissed it without reference to pleading over on the theory that the plaintiff could not sue his union

no matter what he pleaded. We believe the plaintiff should be given an opportunity to amend his complaint.

*By the Court.*—Judgment reversed, with directions to enter an order allowing the plaintiff twenty days from the date of the remittitur to amend his complaint.